UNITED STATES of America,
Defendant, Appellant,

v.

MASSACHUSETTS BONDING AND IN-
SURANCE COMPANY et al.,
Plaintiffs, Appellees.

No. 5024.

United States Court of Appeals
First Circuit.

Argued Oct. 4, 1955.

Decided Oct. 31, 1955.

Rehearing Denied Dec. 15, 1955.

**386**

Benjamin Forman, Washington, D. C., with whom Warren E. Burger, Asst. Atty. Gen., Anthony Julian, U. S. Atty., Boston, Mass., and Paul A. Sweeney, Washington, D. C., were on the brief, for appellant.

Edward A. Crane, John R. Kewer, John M. Hogan, Russell J. Coffin, Dale Vincent and Jules E. Angoff, Boston, Mass., for appellees.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

A complaint under the Federal Tort Claims Act was filed in the United States District Court for the District of Massachusetts, seeking recovery against the United States of money damages on account of the death of Jeremiah C. Crowley. The death was caused by the alleged negligent operation of traveling cranes by various government employees at the Watertown Arsenal, Watertown, Mass., while acting within the scope of their employment.

The plaintiffs named in the complaint, as amended, were the administratrix of the estate of Jeremiah C. Crowley, suing on behalf of the statutory next of kin pursuant to the Massachusetts Death Act, and the insurer of Crowley's employer who, having paid compensation to the decedent's dependents, was empowered to sue the tortfeasor under a subrogation provision of the Massachusetts Workmen's Compensation Act. Mass.G.L.(Ter.Ed.) c. 152, § 15.

After trial, the district court made findings and conclusions to the effect that under the facts disclosed the United States was liable for compensatory damages on account of Crowley's death, and that the resulting pecuniary injuries to Crowley's widow and children, who were his statutory next of kin, amounted to the aggregate sum of $60,000. These findings as to the liability of the United States and the amount of pecuniary injury to the next of kin are not now challenged on this appeal. But the district court went on to rule, as a matter of law, that the compensatory damages to be paid by the United States were not subject to the limitation upon recovery specified in the Massachusetts Death Act. Accordingly, judgment was entered against the United States in the amount of $60,000, from which judgment this appeal has been taken, presenting to us the sole question whether the damages in this case recoverable against the United States may exceed the statutory maximum of $20,000 contained in the Massachusetts Death Act.

We are called upon to interpret and apply the provisions of the Federal Tort Claims Act, to ascertain the "intention of Congress," as the saying goes, in a matter with respect to which, unfortunately, the Congress has not expressed its intention with the clarity and precision which might be desired.

The Federal Tort Claims Act was first enacted in 1946, 60 Stat. 842.

The key section was § 410(a), reading as follows:

"Subject to the provisions of this [Act], the United States district court for the district wherein the plaintiff is resident or wherein the act or omission complained of occurred, * * * sitting without a jury, shall have exclusive jurisdiction to hear, determine, and render judgment on any claim against the United States, for money only, accruing on and after January 1, 1945, on account of damage to or loss of property or on account of personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claim for such damage, loss, injury, or death in accordance with the law of the place where the act or omission occurred. Subject to the provisions of this [Act], the United States shall be liable in respect of such claims to the same claimants, in the same manner, *and to the same extent as a private individual under like circumstances,* except that the United States shall not be liable for interest prior to judgment, or for punitive damages. * * * [Italics added.]

Thus the section did not amount to the creation of a new comprehensive code of federal tort liability. Its purpose was not "the creation of new causes of action but acceptance of liability under circumstances that would bring private liability into existence." Feres v. United States, 1950, 340 U.S. 135, 141, 71 S.Ct. 153, 157, 95 L.Ed. 152. The liability so accepted on behalf of the United States has been referred to as a liability on principles of "respondeat superior." National Mfg. Co. v. United States, 8 Cir., 1954, 210 F.2d 263, 278. Ordinarily this means that the employer has to respond in damages where some employee, acting within the scope of his employment, has

subjected himself to a tort liability under the applicable local law. However, there may be exceptional cases in which the employee who committed the wrongful act has a personal immunity from any tort liability to the particular plaintiff, yet where, under the local law, his employer, if a private person, may have to respond in damages to the injured individual. See Schubert v. August Schubert Wagon Co., 1928, 249 N.Y. 253, 164 N.E. 42, 64 A.L.R. 293; O'Connor v. Benson Coal Co., 1938, 301 Mass. 145, 16 N.E.2d 636; Am.L. Inst., Rest. of Agency § 217(2). No doubt, under such circumstances, there might be a liability against the United States under the Tort Claims Act, though the injured person was disabled from recovering any damages against the wrongdoing employee. See United States v. Hull, 1 Cir.1952, 195 F.2d 64, 68.

Under the original statutory scheme of § 410(a), as set forth above, we think it is accurate to say that the United States could never be liable for a greater amount than that for which its wrongdoing employee would be liable under the local law, except in the one situation, just noted, where the injured individual could recover nothing from the employee only because the latter had a personal immunity from such tort liability.

As we pointed out in United States v. Hull, supra, 195 F.2d at page 67, the waiver of sovereign immunity under the Tort Claims Act is not unlimited; the Congress has not thrown the door wide open to suits against the United States in tort in all cases where the United States, if it were a private individual, would be liable in like circumstances under the applicable local law. See also the exceptions specifically listed in § 421 of the original act, 60 Stat. 845–846, now found in 28 U.S.C. § 2680.

So, too, under § 410(a) of the original act, the United States, if liable at all, was liable "to the same claimants, in the same manner, *and to the same extent*" [italics added] as a private employer under like circumstances; yet this generalization was subject to the

qualification or exception "that the United States shall not be liable for interest prior to judgment, or for punitive damages." Thus, even though under the statutory law of some states a private defendant in a tort action might be liable for interest, from the date the action was instituted, on the amount of damages ultimately determined, see Moore-McCormack Lines, Inc., v. Amirault, 1 Cir.; 1953, 202 F.2d 893, nevertheless the Congress has stipulated that the United States shall not be liable in such cases "for interest prior to judgment." Likewise, though under the law of some states a private employer, particularly a corporate employer, might be liable for punitive damages where the wrongdoing employee, because of the flagrant character of his wrong, might be subject to liability for punitive as well as compensatory damages, see 61 Harv.L.Rev. 119–21 (1947), yet the Congress chose to prescribe in § 410(a) that the United States shall not be liable for "punitive damages."

It was brought to the attention of the Congress that this flat prohibition against the recovery of "punitive damages" produced the unintended effect of precluding all liability of the United States for wrongful death in two states of the Union. The Death Acts of Alabama and Massachusetts, departing from the Lord Campbell's Act prototype, provided or had been construed to provide that, in suits for death by wrongful act, the amount of liability of the defendant should be assessed, not with reference to the amount of pecuniary loss suffered by the next of kin, but rather on a punitive basis with reference to the degree of culpability of the wrongdoer.

The Congress was understandably unwilling on this account to repeal outright the provision of law forbidding the assessment of punitive damages against the United States. But the Congress did not merely make an amendment to the effect that such prohibition against punitive damages should not apply to suits against the United States under the Death Act of any state which provided, as against a private employer, for the amount of liability to be assessed purely on a punitive basis. If it had done the latter, the Congress would have preserved the symmetry of the Act by permitting recovery against the United States only to the extent permitted by the local law as against a private employer. Instead, on August 1, 1947, the Congress added the following proviso to the language of § 410(a) above quoted, 61 Stat. 722:

> "*Provided, however,* That in any case wherein death was caused, where the law of the place where the act or omission complained of occurred, provides, or has been construed to provide, for damages only punitive in nature, the United States shall be liable for actual or compensatory damages, measured by the pecuniary injuries resulting from such death to the persons, respectively, for whose benefit the action was brought, in lieu thereof. * * *"

In the process of enactment of the foregoing amendment, the committee reports in both the House and Senate, after pointing out that under the scheme of the Federal Tort Claims Act each case is determined "in accordance with the law of the State where the death occurred," made the following comment:

> "This bill simply amends the Federal Tort Claims Act so that it shall grant to the people of two States the right of action already granted to the people of the other 46.

> "This bill, with the committee amendment, will not authorize the infliction of punitive damages against the Government, and as so amended, it is reported favorably by a unanimous vote.

> "Its passage will remove an unjust discrimination never intended, but which works a complete denial of remedy for wrongful homicide." H.R.Rep. No. 748, Committee on the Judiciary, 80th Cong., 1st Sess.; Sen.Rep. No. 763, Committee on the Judiciary, 80th Cong., 1st Sess.

The substantive provisions of § 410 (a), as thus amended, have since been split up and reenacted in separate sections of Title 28, U.S. Code, as follows:

"§ 1346. United States as defendant

\*　\*　\*　\*　\*　\*

"(b) Subject to the provisions of chapter 171 of this title, the district courts, \* \* \* shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. \* \* \*"

"§ 2674. Liability of United States

"The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

"If, however, in any case wherein death was caused, the law of the place where the act or omission complained of occurred provides, or has been construed to provide, for damages only punitive in nature, the United States shall be liable for actual or compensatory damages, measured by the pecuniary injuries resulting from such death to the persons respectively, for whose benefit the action was brought, in lieu thereof."

■ Under the provisions of the Federal Tort Claims Act as they now appear in Title 28 of the Code, it is still true that Congress has not enacted a new comprehensive code of federal tort liability. It is still true that the Act in general calls for an application of the law of the state where the wrongful act or omission occurred. Also, the generalization is still in the law that the United States is to be held liable in tort "in the same manner and to the same extent as a private individual under like circumstances." The exceptional situation covered by the second paragraph of 28 U.S.C. § 2674 applies only to two of the 48 states, for in 46 of the states recovery under their respective Death Acts rests upon a compensatory basis. In about a dozen of these 46 states, the local Death Act contains some maximum limit on the amount of recovery. See Note, 26 Ind. L.J. 428, 440 n. 40 (1951). In these states, as the plaintiffs are bound to concede, the United States could not be liable for more than the statutory maximum permitted by state law in suits against private employers. Such is the clear mandate of the first paragraph of 28 U.S.C. § 2674.

As a matter of fact, the Congress and its committees were mistaken in supposing, when the 1947 amendment was enacted, that the Massachusetts Death Act at that time provided for the imposition of damages solely on a punitive basis. Such for many years had been so, but on June 7, 1947, the legislature had amended the statute so as to provide solely for compensatory damages of not less than two thousand nor more than fifteen thousand dollars, "to be assessed with reference to the pecuniary loss sustained by the parties entitled to benefit hereunder." Mass. Acts 1947, C. 506, § 1A. If the local Death Act had remained in this form, then the 1947 amendment of § 410(a) of the Federal Tort Claims Act (now the second paragraph of 28 U.S.C. § 2674) would have had no application; and clearly the United States could not have been held liable for more than the statutory maximum which, under the local Death Act, could have been assessed against a private employer. However, the Massachusetts legislature soon changed its statute again, and when

the tortious act occurred in the present case, and at all times thereafter, the local Death Act contained the following terms, Mass.G.L.(Ter.ed.) C. 229, § 2C, as amended:

"§ 2C. Damages for Death by Negligence, etc.; General Provisions. * * * a person who by his negligence or by his wilful, wanton or reckless act or by the negligence or wilful, wanton or reckless act of his agents or servants while engaged in his business, causes the death of a person in the exercise of due care, who is not in his employment or service, shall be liable in damages in the sum of not less than two thousand nor more than twenty thousand dollars, to be assessed with reference to the degree of his culpability or of that of his agents or servants, to be recovered in an action of tort, * * * to be distributed as provided in section one." Mass.Acts 1951, c. 250.

Therefore, the plaintiffs were quite right in contending that the second paragraph of 28 U.S.C. § 2674 applied to the case at bar.

As suggested above, the 1947 amendment to the Tort Claims Act did make a partial break in the original pattern of the Act in that, wherever the amendment was applicable, it became possible (1) that the United States might be held liable for a greater sum of damages, assessed on a compensatory basis, than might be assessed under the local Death Act against a private employer in cases in which the wrongdoer was deemed to have been guilty of the minimum degree of culpability, and (2) the United States might be liable for no substantial damages at all, where the plaintiff failed to prove any pecuniary injury to the next of kin, as was the case in Heath v. United States, D.C.N.D.Ala.1949, 85 F.Supp.

196, though under the local Death Act a private employer might be subject to large damages assessed on a punitive basis. Thus in either of these situations the United States would not be liable "to the same extent" as a private employer under like circumstances, which is the generally applicable standard in the first paragraph of 28 U.S.C. § 2674.

But we think it is unnecessary to construe the 1947 congressional amendment, which was intended to remove what was deemed to be a discrimination in a very narrow situation, so as to effectuate a far greater discrimination and incongruity. If the contention of the plaintiffs were accepted, then in Massachusetts alone, of all the states whose respective Death Acts contain a maximum limit of recovery, the United States may be held liable in an amount in excess of the maximum limit of recovery permitted against a private employer.[1]

The plaintiffs would have us read literally, and in isolation, the language of the second paragraph of 28 U.S.C. § 2674 that, in lieu of punitive damages, "the United States shall be liable for actual or compensatory damages, measured by the pecuniary injuries resulting from such death to the persons respectively, for whose benefit the action was brought." It is argued that since the damages, so computed, have been found to be $60,000, and since the Congress has imposed no maximum limit of recovery, then necessarily, by the very command of the Congress, the judgment against the United States here must be in the sum of $60,000.

The trouble with the foregoing argument is that the Federal Tort Claims Act, as amended, must be read as an organic whole. In 1947, when the Congress enacted the amendment, it demonstrated no objection to that portion of the Massachusetts Death Act

---

1. This is so because in Alabama, though damages under its Death Act are assessed on a punitive basis, there is no maximum limit on the amount of recovery. See Heath v. United States, D.C.N.D.Ala. 1949, 85 F.Supp. 196. In all the other states whose acts contain a maximum limit, the damages are assessed upon a compensatory basis, so the second paragraph of 28 U.S.C. § 2674 is inapplicable.

which contained a maximum limit of recovery. That was purely a matter of local legislative policy, and if a private employer could not be held for more than $20,000, then the Congress, in waiving the governmental immunity of the United States, had no reason to impose a liability upon the United States in excess of the maximum limit applicable to a private employer. What the Congress did not want was to have damages assessed against the United States on a punitive basis. We give full effect to the language of the congressional amendment if we assess damages against the United States on a compensatory basis measured by the pecuniary injuries resulting to the next of kin. Having done that, and if the amount so computed is in excess of $20,000, it is in no way inconsistent to cut down the larger sum to $20,000, the maximum amount recoverable under the terms of the Massachusetts Death Act. All of the $20,000 to be recovered in such a case would be compensatory damages—not one cent of it would be punitive damages—and thus there would be achieved the congressional objective of preventing the infliction of punitive damages against the United States. In other words, except where Congress has clearly provided otherwise, it is the general scheme of the Tort Claims Act to refer questions of liability of the United States to the provisions of "the law of the place where the act or omission complained of occurred." Thus we must look to the local law to see who is entitled to sue, and for whose benefit; we must look to the local law on whether contributory negligence of the decedent, or a release by him during his lifetime, bars the action for wrongful death; and we must also apply the provision of the local law as to the maximum amount of recovery, for in none of these particulars is there any inconsistent provision in the federal Act.

The judgment of the District Court is vacated and the case is remanded to the District Court for further proceedings not inconsistent with this opinion.

## On Petition for Rehearing.

We have given thought to an earnest petition for rehearing in which appellees urge certain further considerations in the hope that they will persuade us to alter the conclusion we arrived at in our opinion handed down October 31, 1955. Appellees are realistic enough not to overstate their arguments to the extent of suggesting that our previous conclusion was inescapably and palpably in error in respect to the proper interpretation to be ascribed to the regrettably cloudy phraseology of the 1947 amendment to the Federal Tort Claims Act. In our opinion we stated that we were called upon "to ascertain the 'intention of Congress,' as the saying goes, in a matter with respect to which, unfortunately, the Congress has not expressed its intention with the clarity and precision which might be desired." We pointed out that, both under the original terms of the Act and under the Act as amended, it was the basic scheme of the Federal Tort Claims Act not to enact a new comprehensive code of tort liability of the United States, but merely to withdraw the defense of sovereign immunity and to permit a recovery against the United States "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred", the United States to be held liable, in general, "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. §§ 1346(b), 2674. All we did was to reach a conclusion consistent with that basic pattern of the Act, in so far as the Act contained no explicit command to the contrary.

Suppose this accident had taken place in Illinois and suit had been brought against the United States based upon the Illinois Death Act, providing: " * * * and in every such action the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death, to the wife and next of kin of such deceased person * * *

not exceeding $20,000 * * *." Ill. Rev.Stat.1953, ch. 70, § 2. It would be conceded there that though the next of kin might be found to have suffered pecuniary damages to the extent of $60,000, nevertheless the United States could not be held for more than $20,000. Similar maximum limits of recovery are specified in the statutes of about a dozen states whose Death Acts predicate liability upon a compensatory basis, and if any other of the 46 states whose Death Acts are similarly based should in the future insert a maximum monetary limit on recovery, then automatically the United States, if otherwise liable under the Federal Tort Claims Act, would be liable only up to the stipulated maximum. The policy of placing such a maximum limit upon recovery may be open to question, but the wisdom of such policy is for the local legislatures. Obviously the Congress did not concern itself with that. It was content that the United States should be subject to liability only to the top limit of recovery permitted by the local law as against a private employer under like circumstances. See Eastern Air Lines v. Union Trust Co. (United States v. Union Trust Co.) 1955, 95 U.S.App.D.C. 189, 221 F.2d 62, 80, affirmed on other grounds 76 S.Ct. 192.

It taxes our credulity to suppose that Congress, in enacting the 1947 amendment to permit recovery in Massachusetts and Alabama while assuring that damages against the United States under their acts should not be assessed on a punitive basis, intended thereby to compel the result that, in Massachusetts alone of all the states whose respective Death Acts contain a maximum limit of recovery, the United States might be held liable in an amount in excess of the maximum limit of recovery permitted against a private employer. In our original opinion we showed how full effect could be given to the purpose of the 1947 amendment, without at the same time reaching this surely unintended result.

We are well aware how far the peculiar terms of the Massachusetts Death Act, G.L.(Ter.Ed.) C. 229, § 1 et seq., as amended, depart from the conception of the original Lord Campbell's Act, 9 & 10 Vict. C. 93. In Massachusetts, without regard to whether the next of kin suffered any pecuniary loss, and if they did, without regard to the extent thereof, a person who by his wrongful act, or by the wrongful act of his agents or servants while engaged in his business, causes the death of a person is subject to liability for "damages in the sum of not less than two thousand nor more than twenty thousand dollars, to be assessed with reference to the degree of his culpability or of that of his agents or servants, to be recovered in an action of tort." The Supreme Judicial Court has recognized that the damages are thus to be assessed on a punitive basis, though the act may also serve a compensatory purpose in that the money is to be paid to the next of kin who, to the extent that they in fact suffered some pecuniary damages, are thereby recompensed in whole or in part for such loss. See Macchiaroli v. Howell, 1936, 294 Mass. 144, 146–147, 200 N.E. 905; Sullivan v. Hustis, 1921, 237 Mass. 441, 447, 130 N.E. 247, 15 A.L.R. 1360.

■ Appellees are quite inaccurate in their assertion that there is no maximum on the recovery for wrongful death in Massachusetts. This is belied by the very terms of the Massachusetts Death Act. What appellees evidently have in mind is quite a different thing, namely, that where two (or more) wrongdoers concur in proximately causing a single death, the personal representative of the decedent has a statutory cause of action against each individual wrongdoer which may proceed to judgment and satisfaction without reference to the other, and collection of the judgment against one wrongdoer does not extinguish *pro tanto* the liability of the other. This is because the statutory purpose was to impose punishment upon each wrongdoer on the basis of the degree of his personal culpability. See Porter v. Sorell, 1932, 280 Mass. 457, 182 N.E. 837, 85 A.L.R. 1159. As the court further explained in Arnold v. Jacobs, 1944, 316 Mass. 81, 84, 54 N.E.2d 922, 923: "The statute, fol-

lowing a pattern familiar in criminal and penal provisions, limits the penalty that can be imposed upon one person for causing one death. It does not limit the amount that can be collected from a number of wrongdoers for one death. Logically, as in the criminal law, each wrongdoer may be made to suffer the maximum penalty, no matter how many are guilty."

But it is to be noted that if the two negligent actors whose concurring negligence causes a single death are each at the time acting in the scope of their employment for a common employer, then presumably the common employer could be liable only to a single maximum of $20,000, for, by the very terms of the Massachusetts Death Act, "a person who by his negligence * * * or by the negligence * * * of his agents or servants * * * causes the death of a person * * * shall be liable in damages in the sum of not less than two thousand nor more than twenty thousand dollars, to be assessed with reference to the degree of his culpability or of that of his agents or servants * * *." Mass. G.L.(Ter.Ed.) C. 229, § 2C, as amended. In other words, "a person," a single employer, who by the concurring negligence of no matter how many of his servants has caused the death of a person, is subject to but a single action of tort by the personal representative of the decedent, in which the maximum limit of recovery is $20,000.[2]

Though the facts of the instant case do not present the situation, we shall allude briefly to the possibility that a single culpable act might cause the death of two or more persons. Since the Massachusetts act is expressed in the singular, imposing a tort liability of from two to twenty thousand dollars whenever the wrongful act of "a person" causes the death of "a person," it seems that the personal representative of each decedent has a wholly separate and independent cause of action against the wrongdoer, or his employer, for recovery of damages up to a maximum of $20,000. We take it that that is what was meant by the Supreme Judicial Court when it said, in Arnold v. Jacobs, 1944, 316 Mass. 81, 84, 54 N.E.2d 922, 923, that the Massachusetts Death Act "limits the penalty that can be imposed upon one person for causing one death." In such a case, if several separate suits were brought against the United States, each suit would have to be disposed of as we think the case at bar must be disposed of—that is, the court would have to assess the pecuniary damages suffered by the next of kin of each decedent; where such damages are less than $20,000, the lesser amount so assessed is all that the particular plaintiff can recover from the United States; but where such damages are in excess of $20,000 the amount of recovery by the particular plaintiff must be scaled down to the statutory maximum of $20,000.

■ Appellees argue that when Congress in 1947 rejected the Massachusetts method of assessing damages on a penal basis, "it necessarily also rejected the limitations of minimum and maximum imposed solely under penal concepts. If it should be said that the Amendment has rejected the minimum, then how can we reasonably say that the maximum is not likewise rejected?" We agree that the 1947 amendment has rejected the $2,000 minimum in the Massachusetts act, for if the death of a person entailed

2. This point is not presented for decision in the present case. Though the complaint charged negligent acts on the part of several government employees at the Watertown Arsenal, the findings of the district court pinned liability on the United States only on the basis of the wrongful acts of a single employee. Of course it would be a matter of local law what the maximum recovery could be against a private employer when the concurring negligence of two or more of his servants causes a death. If the Massachusetts courts, contrary to what seems to be the effect of the state act, should hold that a private employer in such a case might be liable to a maximum of $20,000 for each servant of his guilty of actionable negligence, the only result would be, on our theory, that the same maximum limit would be applicable to the liability of the United States under like circumstances.

no economic loss to the next of kin, then to hold the United States liable for the $2,000 minimum would be imposing to that extent a purely punitive liability, which the Congress has expressly forbidden. 28 U.S.C. § 2674. But it does not follow that the maximum recovery permitted by the Massachusetts act should also be disregarded when the total pecuniary damages to the next of kin may be in excess of that amount. Appellees ask: "Can it be said that if Massachusetts had a *purely compensatory death statute* at the time of the accident that it would necessarily have included in such statute the same maximum limit of recovery as had been established as a punishment? Is this assumption not at best conjectural and in fact unlikely?" It can be answered that that is exactly what the Massachusetts legislature did, during the brief period in which its Death Act assessed damages on a compensatory basis. Compare Mass. Acts 1947, C. 506, § 1A, with Mass. Acts 1949, C. 427, § 3. Furthermore, the important thing is that Massachusetts chose to impose a maximum limit upon the liability of a private employer in a wrongful death case, not why it chose to do so.

It is suggested by appellees that we ignored "the vitally applicable aspects of government employee morale referred to in United States v. Gilman, 347 U.S. 507 [74 S.Ct. 695, 98 L.Ed. 898]." In the Gilman case the Supreme Court held that the United States, having been held liable under the Federal Tort Claims Act, could not maintain an action for indemnity against the negligent government employee; in the absence of a command from the Congress in that respect, the Court thought it should not adopt and apply in favor of the United States, as a federal decisional rule, the common law rule that an employer held liable on the doctrine of *respondeat superior* for the tort of a servant is entitled to collect indemnity from the servant whose breach of duty to the employer cast that liability upon him. In the Supreme Court opinion reference is made to the improvement in employee morale which was expected to result from an enactment that would offer a liability of the United States for the torts of its agents or servants, with a provision that a judgment against the United States under the Act would thereby extinguish the private tort liability of the government employee to the victim. No doubt such contribution to governmental employee morale was contemplated by the sponsors of the legislation as an incidental by-product. But the emphasis in the committee reports is on the elimination of the recognized inequity of governmental immunity in this field and on saving the Congress from the burden of processing so many private bills for relief.

At any rate, the Federal Tort Claims Act does not undertake to relieve the anxiety of the wrongdoing employees by directly extinguishing whatever causes of action may have been created by local law against such employees. Presumably Congress could not constitutionally do this. What it did do, in effect, was to offer to the injured person an alternative remedy against the United States, subject to the condition that, if the plaintiff should choose to pursue that remedy to judgment against the United States, he would thereby relinquish his claim against the employee. But the plaintiff remains free to pursue the employee rather than the United States; and in some cases he might find it expedient to do so, where the employee is able to respond in damages or is adequately insured, instead of suing the United States in a federal district court sitting without a jury. So far as concerns the peculiar situation in Massachusetts with reference to wrongful death, it might well be preferable for the plaintiff to sue the employee, with the possibility of recovering $20,000 on a punitive basis, rather than to sue the United States, against whom he might recover nothing, if he was unable to prove any pecuniary damages. See Heath v. United States, D.C.N.D.Ala. 1949, 85 F.Supp. 196. And in the situation where a death has been caused by

the concurring wrongful acts of several employees of the United States, it might be expedient for the plaintiff to pursue his separate actions of tort against each of the wrongdoers, for under Porter v. Sorell, 1932, 280 Mass. 457, 182 N.E. 837, he would have the possibility of recovering and collecting in the aggregate a maximum of $20,000 from each wrongdoer, whereas if he enforced his single action of tort against the United States as the common employer he would recover only such damages as he might prove of a pecuniary nature, which in any event could not exceed the maximum of a single $20,000 judgment.

On the whole, we do not perceive that either the holding or the language in United States v. Gilman, 1954, 347 U.S. 507, 74 S.Ct. 695, 98 L.Ed. 898, has much bearing on the case at bar.

Some point is made by appellees based on the assumption that the Federal Tort Claims Act as now interpreted "allows an employee to interplead the United States as a party defendant in a State Court action," citing United States v. Yellow Cab Co., 1951, 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523. We are not sure that we understand the point appellees are trying to make in this connection; but in any event the assumption upon which the argument is based is wholly mistaken. United States v. Yellow Cab Co., supra, did not decide that the government employee sued in a state court action could "interplead" the United States as a defendant therein. This could not be, because under the Federal Tort Claims Act the United States has consented to be sued only in a federal court, without a jury. In United States v. Yellow Cab Co., the legal representative of a decedent had brought suit in a federal court against the Yellow Cab Co. for damages attributable to a death which may have been caused by the concurrent wrongful acts of a servant of the cab company and of an employee of the United States. The Supreme Court held that the waiver of governmental immunity was broad enough to permit the Yellow Cab Co. to implead the United States as a defendant in that action in the federal court, to enforce whatever right to contribution the company might have had under the local law against the United States as a joint tortfeasor. But though United States v. Gilman, supra, has held that the United States, after being subjected to liability under the Federal Tort Claims Act, cannot sue its negligent employee for indemnification, it certainly does not follow that the government employee, if sued in the federal court in a diversity case, could implead the United States and insist that the United States as his employer must indemnify him from the consequences of his own wrongful act.

Finally, appellees argue that the interpretation which we have put upon the Federal Tort Claims Act, as amended, presupposes that the Congress attempted in the 1947 amendment to reject the entire Massachusetts Death Act "with the sole exception of the maximum because that alone is favorable to the United States." Of course the Congress did not attempt to reject the whole of the Massachusetts Death Act. In fact it is only by virtue of the Massachusetts Death Act that the United States may be liable at all for the wrongful death in Massachusetts. If the Massachusetts legislature should repeal its whole act, the United States would be under no liability, since the United States, if a private person, would not then be "liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). As we said in our original opinion: "Thus we must look to the local law to see who is entitled to sue, and for whose benefit; we must look to the local law on whether contributory negligence of the decedent, or a release by him during his lifetime, bars the action for wrongful death; and we must also apply the provision of the local law as to the maximum amount of recovery, for in none of these particulars is there any inconsistent provision in the federal Act."

After full reconsideration of the case, in the light of the petition for rehearing, we are satisfied that our original disposition was correct.

The petition for rehearing is denied.